OPINION
{¶ 1} Both Plaintiff Jade, Inc. and Defendant Kenneth Mathews appeal the August 24, 2007, decision of the Guernsey County Court of Common Pleas dismissing both Plaintiffs Complaint and Defendants-Appellants' counter-claim following a bench trial.
 STATEMENT OF THE FACTS AND CASE {¶ 2} This case arises out of a contract between a start-up internet business, Jade, Inc., and a sole proprietor, Kenneth Mathews, who owned and operated a computer business in Cambridge, Ohio, called "Gig-a-Bytes".
 {¶ 3} The parties began their partnership in April, 1996, when Jade, Inc. agreed to supply internet connectivity for dial-up customers to Guernsey County through Mathew's storefront Gigabytes in Cambridge, Ohio, which was also the facility for housing the equipment in Cambridge.
 {¶ 4} The agreement provided that Jade, Inc. would collect the revenues of the business, pay the expenses, and distribute the net profits 60/40, with sixty percent (60%) to Jade, Inc. and forty percent (40%) to Mathews.
 {¶ 5} Neither party has a signed original document, but the on-going conduct of the parties and their sharing of revenue establish the essence of the parties' agreement. Over the years, the parties signed various modifications of their original agreement, and the agreement was expanded to include other products and services, such as T-1 connectivity and websites. Under the agreement Jade would invoice the customers and the revenues from the billing *Page 3 
would be collected both by Jade and by Mathews at the Gigabytes store. Costs associated with generating the revenue were to be debited against the revenue.
 {¶ 6} Included in the expenses of the business was repayment to Mathews for the initial investment required to purchase the equipment installed at his location. Starting in 1997, this amount was $480 a month through June, 1999.
 {¶ 7} The relationship between the parties as partners became strained, in part due to discrepancies surrounding billing. Mathews often delayed making deposits which caused a large number of customer complaints about the billing during the relationship. Often the customers would go to Gigabytes and complain to Mathews, who often blamed the mistakes in billing on Jade.
 {¶ 8} The partnership arrangement and trust between the parties continued to deteriorate through 2004. At that time Jade, Inc. began planning to expand its business in Guernsey County.
 {¶ 9} In 2004, Verizon Wireless, one of Jade, Inc.'s vendors supplying T-1 connections, began to solicit business from the Guernsey County customer base, and the number of customers who purchased DSL dropped dramatically.
 {¶ 10} In October, 2004, Appellee Mathews' father funded the creation of Gigadata, LLC, a rival internet company operated out of the same premises as Gig-a-Bytes, Appellee's computer store. Such new entity was operated by Appellee's now-wife, Tracy Lough. The new corporation was created by Appellee's attorney, George Georgeff. (Tr. 5-6). *Page 4 
 {¶ 11} In November, 2004, Appellee began to call ISP's in Ohio to find out if other internet providers were experiencing the same loss of business as Jade, Inc. in Guernsey County.
 {¶ 12} On November 20, 2004, Appellant and his attorney met with Appellee in Columbus and produced a list of 20 customers which he believed were paying for internet service, but for whom he had not received payment. Appellee responded to the list and explained the current status of each customer on that list.
 {¶ 13} On December, 2004, Appellee Jade, Inc. learned that Mathews' fianceé, Tracy Lough, was operating a new business in the same building as Gig-a-bytes Computer Store and was signing up customers for the internet and offering them a free month of service. (Tr. 28-29).
 {¶ 14} Upon learning of this competing business, Jade, Inc., on December 20, 2004, filed its complaint against defendant Kenneth Mathews d/b/a Gig-A-Bytes alleging breach of contract, tortious interference, defamation and injury and loss of customers.
 {¶ 15} Defendant Kenneth Mathews d.b.a. Gig-A-Bytes then counterclaimed against the Plaintiff alleging breach of contract, tortious interference and defamation.
 {¶ 16} At the beginning of the trial, Defendant withdrew the tortious interference claim. (T. at 45).
 {¶ 17} A bench trial in this matter commenced on April 16, 2007. At the beginning of the trial, Appellant dismissed his fraud claim. The trial lasted for four (4) days, concluding on April 19, 2007.
 {¶ 18} At the end of that trial, both parties were ordered to set forth proposed findings of facts and conclusions of law on or before May 11, 2007. (T. at 843-844). *Page 5 
 {¶ 19} On April 27, 2007, the plaintiff filed its proposed findings and conclusions.
 {¶ 20} On May 11, 2007, the defendants filed their proposed findings and conclusions.
 {¶ 21} On August 24, 2007, the trial court filed its own findings of fact and conclusions of law. The trial court decided that both parties were in breach of contract, but that the financial records were unreliable and thus provided no evidentiary basis to award damages.
 {¶ 22} It is from this decision that Appellant and Appellee now appeal, assigning the following errors for review:
 ASSIGNMENTS OF ERROR Defendant-Appellant/Cross-Appellee {¶ 23} "I. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FOUND THAT DEFENDANTS HAD FAILED TO PROVE THEIR CASE FOR DAMAGES, WHEN THOSE DAMAGES WERE BASED UPON EVIDENCE PROVIDED BY PLAINTIFF."
 I. {¶ 24} In his sole assignment of error, Defendant-Appellant Kenneth Mathews argues that the trial court erred in finding that he failed to prove damages on his counter-claim. We disagree.
 {¶ 25} Appellant argues that he presented damages of at least $113,000.00 based on information provided by Plaintiff-Appellee. *Page 6 
 {¶ 26} The trial court found that Defendant-Appellant's expert's opinions with respect to damages were not reasonable because they were based on unreliable information provided to him by Plaintiff-Appellee.
 {¶ 27} This Court set forth the elements of breach of contract in the case of Moore v. Daw (Dec. 2, 2000), 5th Dist. Nos. CT-2000-0014 and CT-2000-0017, appeal not allowed, (2001), 91 Ohio St.3d 1509,746 N.E.2d 612:
 {¶ 28} "The elements of a breach of contract claim are summarized as follows: `[A] breach of contract occurs when a party demonstrates the existence of a binding contract or agreement; the non-breaching party performed its contractual obligations; the other party failed to fulfill its contractual obligations without legal excuse; and the non-breaching party suffered damages as a result of the breach.' Garofalo v. ChicagoTitle Ins. Co. (1995), 104 Ohio App.3d 95, 108." Id. at 4.
 {¶ 29} "The plaintiff bears the burden of proving damages. Damages cannot be awarded if the plaintiff fails to meet this burden by presenting adequate proof. Henderson v. Spring Run Allotment (1994),99 Ohio App.3d 633, 651 N.E.2d 489. Evidence of damages must be shown with a reasonable degree of certainty. A plaintiff may not recover speculative damages. Glenwood Homes, LTD. v. State Auto Mut. Ins.Co. (Oct. 1, 1998), Cuyahoga App. No. 72856, unreported. A plaintiff must prove the extent of his damages to be entitled to compensation.Arko-Plastic v. Drake Industries (1996), 115 Ohio App.3d 221,685 N.E.2d 246."
 {¶ 30} "[T]he general measure of damages in a contract action is the amount necessary to place the non-breaching party in the position he or she would have been in had the breaching party fully performed under the contract." Allied Erecting *Page 7 Dismantling Co., Inc. v. Youngstown, 151 Ohio App.3d 16, 31-32,783 N.E.2d 523, 2002-Ohio-5179, citing F. Enterprises, Inc. v. KentuckyFried Chicken Corp. (1976), 47 Ohio St.2d 154, 159, 351 N.E.2d 121.
 {¶ 31} At trial, the only evidence presented by Defendant-Appellant as to damages was through the testimony of Donald Shrodi, CPA. Mr. Shrodi testified that the records which he used to calculate damages were not complete or accurate. (T. at 567). When asked how credible he found the records he used, he stated that they were "deplorable." (T. at 572). He stated that he never received the 2004 tax return or "a couple of bank statements." (T. at 555-556). He stated that the information contained in the Quickbooks file was "clearly inadequate" and "was clearly not prepared by a trained accountant." (T. at 556). When asked on direct examination if he was able to form an opinion as to lost revenues, such inquiry was prefaced with a reference to the lack of records and lack of information available. (T. at 573-574).
 {¶ 32} On cross-examination Mr. Shrodi admitted that no effort was made to count actual DSL customers or the bandwidth and pricing in effect when they enrolled. (T. at 617). He further admitted that he only reviewed "a scant few" vendor bills. (T. at 617-618). When asked to support his projections and assumptions he stated that he could not recall if he factored in "churn" in the customer base or complimentary accounts. (T. at 667-668).
 {¶ 33} Upon review of the evidence presented at trial, we find Defendant-Appellant failed to establish his damages with a reasonable degree of certainty.
 {¶ 34} It is axiomatic that failure to prove one element of a cause of action is fatal to a party's claim. As stated by this Court in the case of Carroll v. Stebelton (May *Page 8 
13, 1996), 5th Dist. App. No. 95CA0059, dismissed, appeal not allowed, (1996), 77 Ohio St.3d 1469, 673 N.E.2d 135:
 {¶ 35} ". . . appellant must come forward with evidence on each element. We conclude from the above, appellant failed to demonstrate damages flowing from the alleged malpractice . . . failure to prove damages is fatal to this claim." Id. at 4. See, also, Marasco v.Hopewell, Franklin App. No 03AP-1081, 2004-Ohio-6715, appeal not allowed, 105 Ohio St.3d 1544, 2005-Ohio-2188, 827 N.E.2d 327, ("failure to prove any one of these elements [of fraud] is fatal to a plaintiff's case").
 {¶ 36} Based on the foregoing, we do not find that the trial court erred in finding that the Defendant-Appellant failed to produce sufficient evidence to prove his counterclaim.
 {¶ 37} Defendant-Appellant's sole assignment of error is overruled.
 CROSS-APPEAL Plaintiff-Appellee/Cross-Appellant {¶ 38} "I. THE TRIAL COURT ERRED IN TRANSFERRING THIS CASE FROM FRANKLIN COUNTY TO GUERNSEY COUNTY SINCE CROSS-APPELLANT ESTABLISHED SUFFICIENT CONTACTS TO ESTABLISH VENUE IN FRANKLIN COUNTY.
 {¶ 39} "II. THE TRIAL COURT'S CONCLUSION THAT JADE INC. BREACHED ITS CONTRACT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE SINCE THE REVENUES FLUCTUATED BASED ON COLLECTIONS AND JADE GAVE A MONTHLY ACCOUNTING AND DISTRIBUTION TO DEFENDANT-CROSS-APPELLEE WHICH WAS ACCEPTED WITHOUT COMPLAINT FOR TEN YEARS. *Page 9 
 {¶ 40} "III. THE TRIAL COURT ERRED IN CONCLUDING THE PLAINTIFF-CROSS-APPELLANT BREACHED THE CONTRACT WITH DEFENDANT-CROSS-APPELLEE SINCE JADE INC. ONLY SOUGHT TO RELOCATE ITS INTERNET CONNECTIONS TO LORENA NELSON'S BUSINESS AFTER GIG-A-BYTES TOOK ITS CUSTOMERS.
 {¶ 41} "IV. THE TRIAL COURT ERRED IN FAILING TO AWARD DAMAGES TO CROSS-APPELLANT WHICH AT A MINIMUM REPRESENTED HIS PARTNERSHIP SHARE OF THE LIABILITIES AT TERMINATION OF THE CONTRACT.
 {¶ 42} "V. THE TRIAL COURT ERRED IN FAILING TO AWARD DAMAGES TO PLAINTIFF-CROSS-APPELLANT ON THE CLAIM OF BUSINESS SLANDER AFTER FINDING FACTS WHICH SUPPORT THAT CLAIM."
 I. {¶ 43} In its first assignment of error, Plaintiff-Appellee/Cross-Appellant challenges the trial court's transfer of this matter from Franklin County to Guernsey County.
 {¶ 44} Plaintiff-Appellee/Cross-Appellant argues that it demonstrated sufficient contacts with Franklin County. It argued that Franklin County was the proper venue in the instant action because its principal place of business was in Franklin County and that customer support calls originated from there, and that that was where invoices were generated.
 {¶ 45} Venue, as opposed to jurisdiction, relates to where a cause can be tried. Morrison v. Steiner (1972), 32 Ohio St.2d 86. Under Civ. R. 3(B), proper venue lies in any one or more of the following counties: 1) the county in which the defendant resides; *Page 10 
2) the county in which the defendant has his or her principal place of business; 3) a county in which the defendant has conducted activity that gives rise to the claim for relief; 4) a county in which the property, or any part of the property, is situated if the subject of the action is real property or tangible personal property; 5) the county in which all or part of the claim for relief arises; 6) in actions under Ohio's long-arm statute, the county where the plaintiff resides; 7) if there is no available forum, the county in which the plaintiff resides, has his or her principal place of business, or regularly and systematically conducts business activity.
 {¶ 46} As set forth above, Civ. R. 3(B)(3) states that proper venue lies in the county in which the defendant conducted activity which gave rise to the claim for relief. Upon review, we find that Plaintiff's claim sought to enforce the terms of the contract. The contract was signed in Cambridge in Guernsey County. The business was located in and operated in Cambridge. The actionable conduct allegedly occurred in Cambridge.
 {¶ 47} We therefore find that Guernsey County was a proper venue for the action.
 {¶ 48} Assuming arguendo, that venue was also proper in Franklin County, Plaintiff-Appellee/Cross-Appellant has failed to show how it was prejudiced by the transfer of this action to Guernsey County.
 {¶ 49} Based on the foregoing, we find Plaintiff-Appellee/Cross-Appellant's first assignment of error not well-taken. Plaintiff-Appellee/Cross-Appellant's first assignment of error is overruled. *Page 11 
 II. {¶ 50} In its second assignment of error, Plaintiff-Appellee/Cross-Appellant argues that the trial court's finding that Jade, Inc. breached its contract with Kenneth Mathews was against the manifest weight of the evidence. We disagree.
 {¶ 51} Cross-Appellant argues that the evidence proved that it fulfilled its duties under the contract by providing monthly accountings to Cross-Appellee Mathews and that it paid him his 40% share of the profit, plus reimbursement and expenses "without fail".
 {¶ 52} A judgment supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction Co. (1978),54 Ohio St.2d 279, 376 N.E.2d 578. A reviewing court must not substitute its judgment for that of the trial court where there exists some competent and credible evidence supporting the judgment rendered by the trial court. Myers v. Garson, 66 Ohio St.3d 610, 614 N.E.2d 742, 1993-Ohio-9. The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. State v. Jamison (1990),49 Ohio St.3d 182, 552 N.E.2d 180, certiorari denied (1990), 498 U.S. 881,111 S.Ct. 228, 112 L.Ed.2d 183.
 {¶ 53} Plaintiff-Appellee/Cross-Appellant specifically takes issue with the trial court's findings as set forth in paragraphs 5 and 13 of its Findings of Fact and Conclusions of Law, wherein it stated:
 {¶ 54} "5. The Court finds based upon the evidence before it that it is unable to determine whether the fault of the customer complaints lies with Mathews failure to timely deposit or with poor accounting procedures with Jade or both. As an example, *Page 12 
the Court finds that Plaintiffs Exhibit 2 as to the revenue billing and cost to not be worthy of belief as while the Court could expect ups and downs in cash flow, there are no months reflecting increased revenues following substantially less revenues during and after 1999.
 {¶ 55} "13. The Court finds, based upon his analysis of the accounts provided, as well as the reasonable expert assumptions of the number of customers upon which the revenues could be determined, the unexplained losses of revenue in one month compared with no corresponding increase in revenues the following month, leads this Court to find that the records of accounts provided to Defendants contained information, the primary purpose of which was to conceal the actual amount of revenue income which should have been paid to Kenneth Mathews."
 {¶ 56} Cross-Appellant herein makes the same arguments to this Court that it presented to the trial court. In making its decision, the trial court had before it the testimony and summary documentation provided by Cross-Appellant. The trial court found the financial records and evidence unreliable.
 {¶ 57} In reviewing a trial court's weighing of competing evidence and credibility determinations, we are guided by a presumption that the trial court's factual findings are correct. State v. Wilson,113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 24. This is due in part to the fact that the trial court occupies the best position from which to view the witnesses and observe their demeanor, voice inflection, gestures, eye movements, etc. Id.
 {¶ 58} We cannot reverse a civil judgment merely because we hold a different opinion on the weight of the evidence presented to the trial court and the credibility of *Page 13 
the witnesses. Id. The Supreme Court recently clarified that unlike criminal appeals, where we can reweigh the evidence, civil appeals require more deference to the trial court and require affirmance of those judgments supported by some competent and credible evidence. Id. at ¶ 26. Thus, civil judgments supported by some competent and credible evidence cannot be reversed on appeal as being contrary to the manifest weight of the evidence. Id. at ¶ 24, citing C.E. Morris Co. v. FoleyConstr. Co. (1978), 54 Ohio St.2d 279, 280.
 {¶ 59} Plaintiff-Appellee/Cross-Appellant's second assignment of error is overruled.
 III. {¶ 60} In its third assignment of error, Cross-Appellant argues that the trial court's finding that Jade, Inc. breached its contract with Cross-Appellee by relocating its internet base was against the manifest weight of the evidence. We disagree
 {¶ 61} In its decision, the trial court found:
 {¶ 62} "The Court further finds that Jade, acting primarily through Mr. Dellar began a deliberate attempt to conceal from Mathews and appropriate a change in the business relationship by negotiating further removal of Jade's business operations from Gigabytes physical location to a storefront owned by Mrs. Nelson. (Findings of Fact, Conclusions of Law, Judgment Entry at ¶ 10).
 {¶ 63} The trial court had before it testimony from Lorena Nelson with regard to when communication commenced with Jade, Inc. concerning its interest in purchasing her company Speedy One, which was part of ProTech. In her testimony, she stated that such communications began around November 19, 2004. (T. at 542). She further *Page 14 
testified that she received a call "a couple of days" after November 19, 2004, from Paige Martin, concerning her interest in selling her business. (T. at 543). She then testified that she went to Cross-Appellant's store about two weeks later and that at that time she was informed by an employee there that Verizon had been there installing T-1 lines. (T. at 537, 546, 521). She stated that she then contacted Jade, Inc. through Atty. Paige Martin and was informed that the installation of the T-1 lines was necessary for the use of Mrs. Nelson's facility. (T. at 521).
 {¶ 64} The trial court also had before it a copy of correspondence from Atty. Paige Martin to Mrs. Nelson's attorney which purportedly indicated different dates than those set forth by Mrs. Nelson.
 {¶ 65} The trial court chose to believe the testimony of Mrs. Nelson.
 {¶ 66} As set forth above, in reviewing a trial court's weighing of competing evidence and credibility determinations, we are guided by a presumption that the trial court's factual findings are correct.State v. Wilson, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 24. Again, the trial court was in the best position to view the witnesses and observe their demeanor, voice inflection, gestures, eye movements, etc. Id.
 {¶ 67} As we find that the trial court's judgment herein was supported by some competent and credible evidence, we do not find such to be contrary to the manifest weight of the evidence.
 {¶ 68} Cross-Appellant's third assignment of error is overruled. *Page 15 
 IV., V. {¶ 69} In its fourth and fifth assignments of error, Plaintiff-Appellee/Cross-Appellant argues that the trial court erred in not awarding damages on its claims. We disagree.
 {¶ 70} Cross-Appellant argues that the trial court should have granted damages to him based on Cross-Appellee's share of the liabilities of the partnership and for business slander.
 {¶ 71} Having listened to four days of testimony and having reviewed all the financial summaries and accounting documentation, as well as having listened to expert testimony concerning same, the trial court in this case found that both parties failed to prove damages on their claims and dismissed both Cross-Appellant's complaint and Cross-Appellee's counterclaim. In so finding, the trial court found that neither party came before the court with clean hands and that neither party presented reliable accounting information.
 {¶ 72} As we have found that the trial court's findings were not against the manifest weight of the evidence, we likewise find that the trial court's determination to not award damages on these claims was not error. *Page 16 
 {¶ 73} Plaintiff-Appellee/Cross-Appellant's fourth and fifth assignments of error are overruled.
 {¶ 74} For the foregoing reasons, the judgment of the Court of Common Pleas of Guernsey County, Ohio, is affirmed.
 By: Wise, J. Hoffman, P. J., and Edwards, J., concur. *Page 17 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Guernsey County, Ohio, is affirmed.
 Costs assessed to Appellant/Cross-Appellee. *Page 1